IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF ALBERT P. SCHULTZ, BONNIE SCHULTZ, Representative, | ) ) ) ) |
| Plaintiff, | ) ) |
| -vs- | ) ) |
| JOHN E. POTTER, Postmaster General, United States Postal Service, | ) ) ) ) |
| Defendant. | ) |

Civil Action No.  05-1169

AMBROSE, Chief District Judge.

# **OPINION AND ORDER OF COURT**

## **SYNOPSIS**

Plaintiff filed a Motion for Partial Summary Judgment on Enforcement. (Docket No. 38).  Defendant has filed a Cross-Motion for Summary Judgment (Docket No. 43).  The parties have responded thereto.  After careful consideration of the submissions and based on my reasons set forth below, Plaintiff's Motion (Docket No. 38) is granted in part and denied in part, and Defendant's Cross-Motion (Docket No. 43) is granted in part and denied in part.

## **OPINION**

### I. **BACKGROUND**

The procedural history of this case is long and drawn out, originating over 15 years ago. As a result, the parties are well versed in the facts and I need not review them here. Suffice it to say that this case arises out of an alleged employment discrimination case. On September 13, 2004, the Merit Systems Protection Board ("MSPB") dismissed the entire matter based on timeliness. On July 22, 2005, the MSPB summarily affirmed the September 13, 2004, decision. The Complaint in this case was filed in response to the July 22, 2005, MSPB decision. The Complaint seeks enforcement of the prior relief granted by the MSPB and the EEOC in 1996, 1999, and 2001. Plaintiff, The Estate of Albert P. Schultz, Bonnie Schultz, Representative, and Defendant, John E. Potter Postmaster General, United States Postal Service, have resolved the majority of the case. The issues remaining involve back pay. (Docket Nos. 38 and 43).

The following are the issued raised by Plaintiff's Motion for Summary Judgment:

> 1. Is the value of fringe benefits payable? If so, What is the monetary value of fringe benefits payable?
>
> 2. On what date do back pay and benefits terminate?
>
> 3. If and when should workers compensation benefits offset back pay in the interest computation under the Back Pay Act ("BPA"), 5 U.S.C. §5596.

(Docket No. 40, p. 3). "Defendant acknowledges that Plaintiff is entitled to back pay as ordered by the Merit Systems Protection Board ("MSPB")." (Docket No. 43, p. 1).

Plaintiff has "agreed not to pursue claims for additional damages, and for back pay and benefits for the period prior to February 24, 1992." (Docket No. 40, p. 2). According to Plaintiff, "[t]he full monetary value of benefits has not been paid for periods after February 23, 1992, and back pay has not been paid for the period after November 23, 1992." *Id.* The issues are ripe for review.

## II. LEGAL ANALYSIS

### A. Standard of Review

In mixed cases, the MSPB's decision concerning the discrimination issue is reviewed *de novo*, whereas its decision concerning the civil service issue is reviewed under a deferential standard. *See,* 5 U.S.C.A. § 7703(c). Defendant argues that because the parties have settled the underlying discrimination claim and the remaining dispute involves back pay, I should review the same under a deferential standard used in cases concerning civil service (non-discrimination) issues. (Docket No. 44, pp. 8-9). I disagree with Defendant. This case arises out of the discrimination claim which is reviewed *de novo.* Therefore, I will apply a *de novo* review. Nevertheless, even under a deferential review, my ruling would be the same.

### B. Fringe Benefits

Plaintiff argues that Defendant has not paid the appropriate amount of the value of fringe benefits that Plaintiff alleges Defendant owes as part of back pay. (Docket No. 40, pp. 3-6). Plaintiff argues that the value of fringe benefits in this case is thirty percent (30%) of the decedent's base pay less the amount of fringe benefits that Defendant can document it paid to Plaintiff, plus interest computed under

3

OPM's back pay interest calculation system. *Id.* at 6. In support of Plaintiff's position, Plaintiff cites to the testimony and report of Plaintiff's expert witness, Professor Reuben E. Slesinger, Ph.D., and *The Comparability of U.S. Postal Service Wages and Benefits to the Private Sector,* report dated August 14, 1995.  *See,* Docket No. 39-5, Ex. 4; Docket No. 39-3, Ex. 2, pp. 46-47; Docket No. 39-4, Ex. 3, pp. 9-10.

In response, Defendant argues that while Plaintiff's evidence regarding 30% relates in general to postal workers, the BPA provides that the amount of fringe benefits recoverable should be specific to the person.  After a review of the evidence and law, I agree with Defendant that the calculation of fringe benefits must be specific to the employee and cannot be based on generalized figures.  5 U.S.C. §5596.   The BPA provides, in pertinent part, as follows:

> § 5596.     Back pay due to unjustified personnel action
>
> \*          \*          \*
>
>> (b)(1) An employee of an agency who...is found...to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee--
>>
>>> (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect--
>>>
>>>> (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the

>  employee through other employment
>  during that period....

5 U.S.C. §5596(b)(1)(A)(i).  Thus, it is evident that the amount recoverable by Plaintiff is the specific amount that Mr. Schultz would have earned or received during the period if he had not been terminated.  *Id.*

In support of its position, Defendant submitted the Declaration of Robert J. Kodelka, the Supervisor for the Back Pay Unit at the Accounting Service Center of the U.S. Postal Service.  (Docket No. 46-2, Ex. A).  Therein, Mr. Kodelka states that the calculations performed utilized data from Mr. Schultz's salary history record.  *Id.*  The fringe benefits reviewed for inclusion in the calculations included: cost of living allowances ("COLA"), overtime, retirement, annual leave and health benefits.  *Id.* at ¶5.  Under the BPA, I find this specific type of analysis based on Mr. Schultz's payroll history to be appropriate.

In calculating Mr. Schultz's fringe benefits, however, Defendant further argues that Mr. Schultz did not elect to participate in the Thrift Savings Program ("TSP") program, so it limited the allowance to the automatic 1% match of his basic pay in its calculation.  (Docket No. 44, p. 13, *citing,* Docket No. 46-2 (Ex. A) at ¶5 and Docket No. 46-4 (Ex. B) at pp. 3-4).  In opposition, Plaintiff asserts that he should have been given the benefit of the maximum TSP match, plus appropriate accrued earnings. (Docket No. 51, p. 8).  The regulation governing retroactive TSP contributions in connection with a back pay award is 5 C.F.R. §1605.13.  Section 1605.13 provides, in pertinent part, as follows:

>  § 1605.13 Back pay awards and other retroactive pay adjustments.

> (a) Participant not employed. The following rules apply to participants who receive a back pay award or other retroactive pay adjustment for a period during which the participant was separated from Government employment:
>
> > (1) If the participant is reinstated to Government employment, immediately upon reinstatement the employing agency must give the participant the opportunity to submit a contribution election to make current contributions. The contribution election will be effective as soon as administratively feasible, but no later than the first day of the first full pay period after it is received;
> >
> > (2) The employing agency must give the participant the following options for electing makeup contributions:
> >
> > > (i) If the participant had a contribution election on file when he or she separated, upon the participant's reinstatement to Government employment, that election will be reinstated for purposes of the makeup contributions; or
> > >
> > > (ii) Instead of making contributions for the period of separation in accordance with the reinstated contribution election, the participant may submit a new contribution election if he or she would have been eligible to make such an election but for the erroneous separation.

5 C.F.R. § 1605.13(a). There is no evidence that Mr. Schultz submitted a new contribution election. Mr. Schultz's Notification of Personnel Action dated

September 9, 1995, indicates that Mr. Schultz was eligible for the TSP, but that he did not elect to participate. (Docket No. 46-4, p. 4). Consequently, Mr. Schultz is not entitled to any additional contributions, other than the automatic 1% matching.

Additionally, Defendant argues that because Mr. Schultz allegedly received health benefits through the Office of Workers Compensation Program ("OWCP"), Defendant did not include any payment for health benefits. *Id.; see also,* Docket No. 46-4, Ex. C. Upon review of the evidence, however, I find that Plaintiff did not receive health benefits during the time period at issue. *See,* Docket No. 46-4, Ex. C, pp. 33-34 and Docket No. 39-7, Ex. 6. As noted by Mary Keck, Senior Injury Compensation Specialist, Mr. Schultz did not have continuous coverage available to him. Docket No. 46-4, Ex. C, p. 33. Furthermore, while there is a retroactive deduction taken from Mr. Schultz's OWCP payments for health benefits, there is no corresponding increase in his OWCP payments for the agency amount that should have been given to Mr. Schultz. Docket No. 39-7, Ex. 6. Since there was a retroactive deduction taken, I find that Defendant should have included health benefits in calculating the back pay for the time period at issue. Therefore, Defendant is required to include health benefits in calculating the amount of back pay.

**C. Termination Date of Back Pay**

The parties are also at odds over the date that back pay and benefits terminate. *See,* Docket No. 40, pp. 7-8; Docket No. 44, pp. 9-12; Docket No. 51, pp. 4-8. Plaintiff argues that the date that back pay should terminate is March 11, 1998, "because this was the first job offer that Defendant made to attempt to

7

accommodate Plaintiff's disability and remedy the discrimination that both the MSPB and EEOC agreed in their opinions and orders existed and was required to be remedied." (Docket No. 40, p. 8; Docket No. 51, p. 8). Defendant, on the other hand, argues that the termination of the back pay period is June 12, 1996, as that was the date of the decision by the MSPB. (Docket No. 44, p. 12, *citing,* Docket No. 46-8, Ex. F).

The implementing regulations concerning the computation of back pay state, in pertinent part, as follows:

> § 550.805 Back pay computations.
>
>> (a) When an appropriate authority corrects or directs the correction of an unjustified or unwarranted personnel action that resulted in the withdrawal, reduction, or denial of all or part of the pay, allowances, and differentials otherwise due an employee--
>>
>>> (1) The employee shall be deemed to have performed service for the agency *during the period covered by the corrective action....*

5 C.F.R. §550.805. The regulation does not state a particular termination date, but only that back pay covers the time period "during the period covered by the corrective action." *Id.* Plaintiff cites to the case of *Smith v. Department of the Army,* 458 F.3d 1359 (Fed Cir. 2006), for the proposition that back pay continues until the date the discrimination was remedied and, in this case, Plaintiff argues that the date is at least March 11, 1998, the date of the alleged first offer. (Docket No. 40, pp. 7-8). In opposition, Defendant argues that *Smith* is distinguishable from this case. (Docket No. 44, p. 12). After a review of the same, I agree with Defendant. Unlike in *Smith*,

there was never a finding of ongoing discrimination beyond the initial adverse personnel action period that terminated with the MSPB's corrective action of June 12, 1996. *See,* Docket No. 46-12. Consequently, I find that the termination date for the calculation of back pay is June 12, 1996.

### D. <u>**Workers Compensation Benefits**</u>

Plaintiff first argues, without much analysis, that workers compensation benefits paid to Mr. Schultz by the OWCP should not be an offset from back pay.[1] (Docket No. 40, pp. 8-9). In support of its position, Plaintiff, in a footnote, quotes a footnote in the case of *Mason v. The Assoc. for Indep. Growth,* 817 F. Supp. 550 (E.D. Pa. 1993), that "it may be appropriate not to deduct workmen's compensation benefits in certain cases" but does not relate it to this case. I am not persuaded by Plaintiff's conclusory argument. While it is true that the BPA and its implementing regulations do not specifically indicate that OWCP benefits during a back pay period are to be an offset, (*see,* 5 U.S.C. §5596; 5 C.F.R. §550.805), Plaintiff concedes relevant case law indicates that OWCP benefits are often considered to be an offset. *See, Brownlow v. Dept of the Treasury,* 85 M.S.P.R. 349 (2000); *Special Counsel v. Dept. of Vet. Affairs,* 81 M.S.P.R. 601 (1999); *Boomer v. Dept. of the Navy,* 50 M.S.P.R. 540 (1991). As a result, I find Defendant is entitled to offset back pay by the amount of OWCP benefits Mr. Schultz received.

Plaintiff next argues at length that even if OWCP benefits are an offset from

---

[1] Plaintiff acknowledges that it had previously agreed that workers compensation benefits paid to Plaintiff by the OWCP should be offset from back pay. (Docket No. 40, pp. 8, 10). Because the parties could not agree on how "appropriate interest" should be calculated, Plaintiff withdrew his agreement that the benefits should be considered an offset. *Id.,* at pp. 8-9.

back pay, then it should be offset after interest is calculated. (Docket No. 40, pp. 8-17). I am not persuaded by this argument either. The BPA and its implementing regulations are silent on the issue of whether to calculate interest before or after the offset. *See,* 5 U.S.C. §5596(b); 5 C.F.R. §§550.805, 550.806. Additionally, there is no case law directly dealing with this issue. What is clear, however, is that the intent of the BPA is to make the employee reasonably whole by permitting interest on that amount improperly withheld from the employee. *Naekel v. Department of Transp., F.A.A.,* 845 F.2d 976, 979 (Fed. Cir. 1988). Since the date Plaintiff received the OWPC benefits, he had the financial benefit of the time value of that money. Given the intent of the BPA to make the employee reasonably financially whole, it only stands to reason that Plaintiff is not entitled to interest on the money previously received by the OWPC. Consequently, I find that OWPC benefits are to be offset prior to calculating back pay interest.

## ORDER OF COURT

AND NOW, this **12th** day of April, 2007, upon consideration of the parties Cross-Motions for Summary Judgment (Docket Nos. 38 and 43), it is ordered that the said Motions are granted in part and denied in part as follows:

> 1. The value of fringe benefits in this case is properly calculated by Defendant, except that Defendant is required to include health benefits in calculating the amount of back pay;
>
> 2. The termination date for the calculation of back pay is June 12, 1996; and
>
> 3. OWCP benefits are an offset and are to be offset prior to

calculating back pay interest.

A conference in this case is set for Tuesday, April 24, 2007, at 3:15 P.M. before the undersigned.  Counsel shall have settlement authority and parties are to be either present or available by telephone.  Counsel are to fax their position letters three (3) days prior to the conference.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge